# NEWCOMB v. NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

### Division One, June 20, 1904.

1. **RETURN: Statements Import Verity.** The statements in the return of the sheriff, showing service of the summons on the agent of defendant, are, for the purposes of the suit, conclusive on the parties to it. The court should ignore affidavits contradicting the statements in that return, to the effect that the persons therein recited to be agents of defendant were in fact not such.

2. **SUMMONS: Foreign Corporations: Agent.** A corporation doing business in this State, may, for the purpose of serving process, be an "agent" of a foreign corporation, within the meaning of the statute prescribing how process must be served on foreign corporations.

3. **———: ———: ———: How Served.** But in serving a corporation as "agent" of the foreign corporation made defendant in the suit, the writ must be served in the manner pointed out by the statute for serving corporations in their own behalf.

4. **———: ———: ———: Place of Business.** In order for the service of the writ on "any officer, agent or employee" of a foreign corporation to be sufficient, it should show that defendant had no office or place of business at which the writ could be served, and unless it so shows, it should be quashed, on a separate motion filed for the purpose alone, for the insufficiency apparent from its face.

5. **———: Appearance: Plea In Answer: Jurisdictional Question How Raised.** Whilst it is true that under our code of civil procedure a defendant is required to plead all his defenses, whether in abatement or in bar, in one answer, and therefore a plea to the jurisdiction may be included in an answer that contains also a plea to the merits, and in such case a plea to the merits does not waive a plea to the jurisdiction, yet if the ground upon which the defendant denies the jurisdiction is that the sheriff's return on the summons, on its face, is not sufficient to bring the defendant into court, that is not a fact to be pleaded in the answer, but is to be presented in a motion to quash the return. If the ground on which the jurisdiction

is denied appears on the face of the petition the objection is to be raised by demurrer; when the jurisdiction is denied because of some fact that does not appear on the face of the return or on the face of the petition, then such fact is to be pleaded in the answer, and in that case it is not waived by a plea to the merits in the same answer.

6. ———: ———: **Appearance: Plea to Merits: Decisions of Federal Courts.** Decisions of Federal courts of limited jurisdiction, to the effect that a plea to the merits does not waive a prior plea to the jurisdiction, have no application to a court of general common law jurisdiction, such as our circuit courts.

7. **NEGLIGENCE: Jumping From Train.** It is held in this case that the act of plaintiff in jumping from a slowly moving train upon a greasy platform in the sheds of a very large terminal depot, about twilight, after having been told to jump off by the porter of the car which he had by mistake and the invitation of the porter mounted, was not so palpably negligent as to justify the court in pronouncing it to be negligent as a matter of law.

8. ———: ———: **Greasy Platform: Connected With Injury: Conflict of Evidence.** There was evidence that there were considerable grease and oil on the platform near where plaintiff was ordered by the porter to jump off of the car, that he lit on the greasy inclined floor of the platform and slipped towards the train, and fell under the train in such a way that his foot was run over by the wheels, and that there was a lateral open space of about seven inches between the edge of the platform and the steps of the car which the evidence tended to show was an unsafe arrangement and increased the danger to persons getting off the train. *Held,* that this evidence connects the injury with the greased and slippery condition of the platform, and there being substantial evidence to show that the platform at the point where plaintiff lit and fell was covered with oil and grease, the court properly refused to sustain a demurrer to the evidence.

9. **EVIDENCE: Change of Venue: Prejudice: Discrediting Applicant.** It is not error to sustain an objection to a question propounded on cross-examination to the plaintiff who has obtained a change of venue on account of the prejudice of the inhabitants, asking him to name some persons who were prejudiced against him. A community may have a pronounced prejudice against a litigant as a party to the suit, yet the individuals of the community may have none against him as an individual.

10. ———: *Other Accidents.* It is not proper to permit the defendant to show as a matter of defense, that on other occasions

there were great crowds in the terminal station where plaintiff was injured and that no accident occurred on those occasions.

11. **NEGLIGENCE: Instruction: Distinction Between Non-Direction and Misdirection.** The petition charged the defendant with negligence in not having placards on the trains or ushers in uniform, as was customary, to direct him which of defendant's two trains about to move out of a terminal station, to take, but did not charge that he was misdirected by the porter of the wrong train to board it, and the instruction in describing plaintiff's conduct in wandering through the station in search of his train brought in the fact that he was told by the porter of the wrong train to board it. *Held*, that the petition did not charge non-direction and the instruction submit the issue of misdirection; for, the failure to provide the ushers and placards to give the customary direction was the cause of his being misdirected by the porter.

12. ——: ——: **Omitting Issue of Contributory Negligence.** Where an instruction authorizes a verdict for plaintiff upon proof that his injuries were the result of defendant's negligence as defined in other instructions, and the instructions given for defendant bring in every act brought forward as a defense, it is not erroneous as omitting one of the defenses of contributory negligence.

13. ——: ——: **Sufficiency of Evidence.** When two intelligent men are in a train-shed looking for a train and see no one or any placard to point them to it, that is sufficient evidence to submit that issue to the jury.

14. ——: **Proximate Cause: Two or More Acts.** The question of which of two or more acts of negligence was the proximate cause of the accident does not arise where the first act concurred with the others in producing the result.

15. ——: ——: **Grease on Platform: Jumping From Moving Train.** Railroads are expected to know that persons of ordinary prudence jump on and off of trains moving slowly out of train-sheds, and are required to take reasonable care to render the platform not more dangerous to such persons than is necessary—by the accumulation of grease and oil thereon.

16. ——: ——: **Jumping From Moving Train: Knowledge of Porter.** Where the plaintiff, after inquiry from the porter on, invitation from him, mounted the wrong one of defendant's two trains about to leave for the same destination, and on being informed of his mistake was directed by the porter to jump off of the train then slowly moving, it was not error to instruct the

Vol 182 mo—44

jury that if plaintiff did not know the danger and by the use of ordinary care could not have discovered the danger of jumping from a train then slowly moving, yet if the porter knew or by the exercise of ordinary care could have discovered it, then he was negligent in giving the direction, and the porter's negligence was the defendant's negligence.

17. ———: ———: **Limiting Liability to One Act.** Where the petition charges several acts of negligence, the instructions should not excuse the defendant if the jury find it was not guilty in one particular only.

18. **DAMAGES: Excessive Award: $20,000.** Plaintiff, a man 62 years old at the date of the trial, had his foot crushed by the wheels of defendant's car, which made necessary an amputation five or six inches below the knee; he now uses an artificial leg, but because of the suffering is compelled to frequently take it off and use crutches; there is a chronic tendency to ulceration, owing to a displacement or misplacement of nerves at the point of amputation, and this condition may require another amputation; before the accident he was a man of buoyant spirit; now, sad and dispirited; he avoids the companionship of friends which he formerly sought, and his life is blighted. *Held*, that, guided by the conservative precedents of this court, an award of $20,000 is excessive, and $10,000, with an award for surgeon's fees, would be a fair compensation, so far as money can compensate.

Appeal from Lincoln Circuit Court.—*Hon. E. M. Hughes,* Judge.

AFFIRMED ON CONDITION.

*Everett W. Pattison* and *Norton, Avery & Young* for appellant.

(1) The service upon the two corporations, to-wit: The Wabash Railroad Company and the Cleveland, Cincinnati, Chicago and St. Louis Railway Company, was a nullity. R. S. 1899, sec. 570; Cloud v. Pierce City, 86 Mo. 363; Sykes v. Railroad, 77 S. W. 723; St. Clair v. Cox, 106 U. S. 350, 27 L. Ed. 225; Railroad v. Pinkney, 149 U. S. 194, 37 L. Ed. 699; New Mineral River Co. v. Seeley, 120 Fed. 200; Ins. Co. v. Spratley, 172 U. S. 610, 43 L. Ed. 569; Strain v. Chicago Portrait Co., 126 Fed. 834; Railroad v. Walker, 9 Lea (Tenn.) 475;

Railroad v. Morris, 68 Tex. 49. (2) The service upon
C. M. Saffarans was not sufficient under section 570 of
the Revised Statutes, to give the court jurisdiction of
the defendant, because: (a), there is nothing in the
return indicating that the defendant is not a domestic
corporation; (b), the service is totally insufficient as
against a domestic corporation; (c), even if there was
anything in the record showing or tending to show that
the defendant was a corporation organized under the
laws of any State other than Missouri, nevertheless the
return would be insufficient for the reason that it does
not show that the defendant is a corporation of some
other State or country, nor does it show that it did not
have an office in this State; (d), and further, the return
shows that Saffarans was not in charge of any office or
place of business of defendant, but, on the contrary, was
in charge of an office of some other company; (e), the
return does not show that Saffarans was an agent or
employee of defendant in Missouri. In support of the
above points, we cite the cases already referred to under
the preceding head; also, Earle v. Railroad, 127 Fed.
235. (3) The return must show a valid service.
Thompson on Corp., sec. 7545; Haley v. Railroad, 80
Mo. 112; Heath v. Railroad, 83 Mo. 625; Blanton v. Jami-
son, 3 Mo. 52; Bank v. Suman, 79 Mo. 531; Rosenberger
v. Gibson, 165 Mo. 16; Williams v. Monroe, 125 Mo. 584;
Gamasche v. Smythe, 60 Mo. App. 161; Vickery v. Rail-
road, 93 Mo. App. 1; Huff v. Shepard, 58 Mo. 246;
Dickerson v. Railroad, 43 Kan. 702; Fallman v. Rail-
road, 45 Fed. 156; Miller v. Railroad, 41 Fed. 431; Set-
tlemier v. Sullivan, 97 U. S. 448, 24 L. Ed. 1111; United
States v. Tel. Co., 29 Fed. 17; Hammond v. Olive, 44
Miss. 547; Railroad v. Dawson, 3 Ill. App. 120. (4)
The return must be complete in itself, and can not be
helped out by evidence *aliunde*. See cases already cited;
also, Metcalf v. Gillet, 5 Conn. 404; Sanford v. Pond,
37 Conn. 591; Purrington v. Loring, 7 Mass. 392; Wel-
lington v. Gale, 13 Mass. 489; King v. Bates, 80 Mass.

370; Gardner v. Small, 17 N. J. L. 162; Bank v. Barnes, 10 Humph. (Tenn.) 244; Thompson v. Griffis, 19 Tex. 116. (5) Defendant has not waived its right to insist upon its plea to the jurisdiction. (a) It properly united the plea to the jurisdiction with the answer to the merits. Young Men's Christian Assn. v. Dubach, 82 Mo. 475; Cohn v. Lehman, 93 Mo. 574; Christian v. Williams, 111 Mo. 429; Nichols. v. Stevens, 123 Mo. 96; Commission Co. v. Block, 130 Mo. 668; State ex rel. v. Valins, 140 Mo. 523; State ex rel. v. Spencer, 166 Mo. 279; Travers v. Railroad, 3 Keyes (N. Y.) 497; 1 Ency. of Plead. and Prac., p. 854. (b) The fact that it took all the necessity steps to sustain both defenses, and that it went to trial on both defenses, does not constitute a waiver of either defense. Little v. Harrington, 71 Mo. 390; Higgins v. Beckwith, 102 Mo. 456; Kenner v. Doe Run Lead Co., 141 Mo. 248; Guy v. Mapes, 141 Mo. 441; Ziefle v. Seid, 137 Mo. 538; Dezell v. Fidelity and Cas. Co., 176 Mo. 293; Roberts v. Ins. Co., 26 Mo. App. 92; Biles v. Beadle, 93 Mo. App. 628; Harkness v. Hyde, 98 U. S. 476, 25 L. Ed. 237; Railroad v. Pinkney, 149 U. S. 194, 37 L. Ed. 699; Railroad v. Gonzales, 151 U. S. 496, 38 L. Ed. 248; Coal Co. v. Railroad, 98 Fed. 271; Scott v. Hoover, 99 Fed. 247; Hulbert v. Palmer, 39 Neb. 158; Brewing Assn. v. Peterson, 41 Neb. 897; Hankinson v. Page, 19 Abb. (N. C.) 274; Briggs v. Davis, 34 Maine 158.; Simpson v. Railroad, 89 Tenn. (5 Pick.) 304; Deidesheimer v. Brown, 8 Cal. 339; Lyman v. Milton, 44 Cal. 630; Kent v. West, 50 Cal. 185; Waters v. Field, 29 Wash. 565; Kahn v. Loan Assn., 115 Ga. 459; Elliott on App. Proc., sec. 677; 3 Cyc. of Law and Proc., pp. 525-6. (c) The fact that defendant obtained a verdict on the first trial, and appeared to the first appeal, does not constitute a waiver. Johnson v. Dietrich, 152 Mo. 254; Gipson v. Powell, 167 Mo. 195. (6) The court erred in overruling defendant's demurrer to the evidence. Chaney v. Railroad, 176 Mo. 598. (7) The court erred in sustaining plaintiff's objections to the

cross-examination of plaintiff in reference to the affidavit made by him for the purpose of obtaining a change of venue.  (a)  A witness may be asked on cross-examination any question which tends to test his accuracy, veracity or credibility, or to shake his credit by injuring his character.  3 Jones, Evid., secs. 829, 841; 1 Starkie, Evid., 873; State v. Hack, 118 Mo. 99; State v. Taylor, 118 Mo. 160; State v. Downs, 91 Mo. 25; State v. Jones, 106 Mo. 302; Bates v. Holladay, 32 Mo. App. 162; Becker v. Schutte, 85 Mo. App. 57; Stoffer v. State, 15 Ohio St. 47, 86 Am. Dec. 470; Howard v. Ins. Co., 4 Den. (N. Y.) 504; People v. Casey, 72 N. Y. 398; People v. Irving, 95 N. Y. 541; Real v. People, 42 N. Y. 281; People v. Parket, 137 N. Y. 535; Bernstein v. Singer, 1 App. Div. (N. Y.) 63; Thomas v. David, 7 Car. and P. 350; Comm. v. Sacket, 22 Pick. (Mass.) 394; Smith v. State, 64 Md. 25; McLaughlin v. Mencke, 80 Ind. 87; People v. Arnold, 40 Mich. 713; People v. Sutherland, 104 Mich. 468; People v. Rice, 103 Mich. 350; People v. Liphardt, 105 Mich. 80; Johnston v. Ins. Co. (Mich.), 64 N. W. 5; Kellogg v. Nelson, 5 Wis. 131; Kirschner v. State, 9 Wis. 144; Long v. Bove, 106 Ala. 570; People v. Knight (Colo.), 43 Pac. 6; Bow v. People, 160 Ill. 438; State v. Mecum (Iowa), 64 N. W. 286; State v. Philpot (Iowa), 66 N. W. 730; Willis v. State, 43 Neb. 110; Exon v. State, 33 Tex. Crim. Rep. 461; Sentell v. State (Texas), 30 S. W. 226; Coal Co. v. Lawson (Texas), 31 S. W. 843; Magruder v. State (Texas), 33 S. W. 233; State v. Ward, 49 Conn. 429; Free v. Buckingham, 59 N. H. 219; Hollingsworth v. State, 53 Ark. 387; Fitzpatrick v. Riley, 163 Pa. St. 65; Graham v. McReynolds, 88 Tenn. 240.  (b)  This rule applies with especial force when the witness is also a party.  (c)  No question of discretion was involved in this ruling; the refusal to permit the cross-examination was placed upon the ground that it was wholly incompetent for any purpose.  (d)  Had the court below placed its refusal on discretionary grounds, the rejection of defendant's offer

to cross-examine would have been an abuse of discretion. Koenig v. Railroad, 173 Mo. 722; In re Mason, 14 N. Y. Supp. 440; Jones on Evid., sec. 841; Carroll v. State, 32 Tex. Cr. Rep. 434; People v. Harrison, 93 Mich. 594. (8) The court below erred in overruling defendant's objection to the question put to the policeman on his redirect examination. (a) The question was leading. Walser v. Graham, 45 Mo. App. 639; Anderson's Dict. of Law, Titles, ''Leading Question,'' ''Question;'' People v. Mather, 4 Wend. (N. Y.) 247. (b) It was the most objectionable form of a leading question in that it imputed to the witness testimony which he had not given, viz., that he had seen oil on the incline. 3 Jones, Evid., sec. 838; Sanderlin v. Sanderlin, 24 Ga. 583; Carpenter v. Ambroson, 20 Ill. 172; Haish v. Munday, 12 Ill. App. 545; Railroad v. Thompson, 10 Md. 83; Klock v. State, 60 Wis. 576; People v. Graham, 21 Cal. 266; People v. Ah Sing, 70 Cal. 11. (9) The court below erred in excluding the testimony offered by defendant to show that large crowds had been handled in the Buffalo station without accident. Brewing Co. v. Talbot, 141 Mo. 683; Hysell v. Swift, 78 Mo. App. 47. (10) The court below erred in giving the first six instructions asked by defendant: (a) Plaintiff's first instruction given was erroneous; (b) because not based upon the pleadings. Sidway v. Missouri L. & L. S. Co., 163 Mo. 374; Hesselbach v. St. Louis, 179 Mo. 505. (c) Because it declares as a matter of law that the porter's act was negligent. (d) The instruction excludes from the consideration of the jury one of the charges of contributory negligence. (2) Plaintiff's second instruction given was erroneous: (a) Because it ignores plaintiff's contributory negligence in failing to make such inquiries as he should have made as to the location of the car. Murray v. Railroad, 176 Mo. 190. (b) Because such failure, even if it had been proved, could not have been the proximate cause of plaintiff's injury. It is for plaintiff to show the causal

connection between the negligence and the injury. Warner v. Railroad, 77 S. W. 67. (c) Plaintiff's third instruction given was erroneous: (1) Because it declares as a matter of law that a railroad company must provide a safe place for passengers to alight from its trains when in motion; and this, too, regardless of the speed of the train. Grattis v. Railroad, 153 Mo. 404; Railroad v. Scates, 90 Ill. 586; Burrows v. Railroad, 63 N. Y. 556; Central R. & B. Co. v. Letcher, 69 Ala. 106; Solomon v. Railroad, 103 N. Y. 443; Laflin v. Railroad, 106 N. Y. 139; Hiatt v. Railroad, 96 Iowa 169; Crocheron v. Ferry Co., 56 N. Y. 655; Crafter v. Railroad, L. R. 1 C. P. 300; Thompson on Carriers, p. 104n; Thompson on Negligence, sec. 2691. (2) Because there was no evidence that there was "grease or other slippery material" on the incline at the time. Much less was there any evidence that grease or other slippery material "had been allowed by defendant to remain there after the lapse of a reasonable time to remove the same." (d) The liability of a railroad company for the acts of a sleeping car porter, employed and paid by the sleeping car company, is limited to his acts done in connection with the management of the sleeping car. And this liability is founded, not on the relation of employer and employee, but on the rule of law which requires the railroad company to see that its passengers are safely transported, regardless of the character of the car in which they ride and of whose property such car is, or who is in charge of it. Pennslyvania Co. v. Roy, 102 U. S. (12 Otto) 451, 26 L. Ed. 141; Thorpe v. Railroad, 76 N. Y. 406; Dwinelle v. Railroad, 120 N. Y. 117; Williams v. Pullman P. C. Co., 40 La. Ann. 417; 3 Wood on Railroads, sec. 367; 3 Thompson, Negligence, sec. 3613, p. 975.

*G. T. Dunn, Charles Martin, E. B. Woolfolk* and *Barclay & Fauntleroy* for respondent.

(1) The service upon defendant was entirely good, regarding it as a foreign corporation. Service upon "any officer, agent or employee in any county where such service may be obtained," is valid service upon a foreign corporation in Missouri. R. S. 1899, sec. 570. If a corporation may be the agent of a foreign corporation for the transaction of its business in Missouri, it may properly be its agent to receive service of process under this statute. When a statute points out or designates a person, "females as well as males, and bodies corporate as well as individuals, shall be deemed to be included." R. S. 1899, sec. 4158. (2) The service by the sheriff upon Saffarans was perfectly correct. The return recites that said Saffarans was "freight contracting agent of the within named defendant." A freight contracting agent is, of course, as good an "agent or employee" as a "freight solicitor" is held to be in Davis v. Jacksonville Line, 126 Mo. 69, which follows Palmer v. Penn. Co., 35 Hun 369 (affirmed, 94 N. Y. 679). The return of service need not state that defendant is a foreign corporation if that fact appears on the face of the petition and is not denied on oath. The maxim *omnia rite acta* applies. Davis v. Jacksonville Line, 126 Mo. 69. The return in an action against a foreign corporation need not recite that said defendant has any office in Missouri, if the service is properly made on an "agent or employee" in the county where the service may be obtained, which is all that the statute requires. R. S. 1899, sec. 570. The return of the sheriff is in itself conclusive on the parties to a cause in Missouri in the same action. Heath v. Railroad, 83 Mo. 617; Decker v. Armstrong, 87 Mo. 316; Horton v. Railroad, 26 Mo. App. 349; State ex rel. v. Finn, 100 Mo. 429; Rumsey Mfg. Co. v. Baker, 35 Mo. App. 217; State v. O'Neill, 4 Mo. App. 221; 3 Pattison's Comp. Mo. Dig., secs. 299, 300, 303, p. 2983. (3) The defendant in many ways, has appeared in the action, voluntarily and thereby has waived its right to insist on any objection

to jurisdiction over its person. (a) A party may unite a plea to the jurisdiction with an answer to the merits, but if a party objects to the jurisdiction of the court over him, he should bring that objection to the attention of the court before going to trial on the merits, in order to spare his adversary the expense of trying the merits should his jurisdictional point be well taken. If, without asking to have the issue as to jurisdiction first tried (as it may be, R. S. 1899, sec. 694), he goes to trial on the merits, he thereby waives his objection to the jurisdiction. Byler v. Jones, 79 Mo. 261; Pry v. Railroad, 73 Mo. 127; Spencer v. Medder, 5 Mo. 458; Fitterling v. Railroad, 79 Mo. 504; Sealy v. Lumber Co., 19 Ore. 94. (b) While a party may plead to the merits and to the jurisdiction in the same answer, he may also waive his plea to the jurisdiction by appearing generally. When he agrees to a continuance, he appears generally. Peters v. Railroad, 59 Mo. 406; Baisley v. Baisley, 113 Mo. 544; Seay v. Sanders, 88 Mo. App. 478. (c) An appearance to have a special jury summoned, or to pass the case to the foot of the docket, are acts indicating a general appearance. Orear v. Clough, 52 Mo. 55; Pry v. Railroad, 73 Mo. 124; Feedler v. Schroeder, 59 Mo. 364. (d) Obtaining time to plead by consent is a general appearance. State v. Messmore, 14 Wis. 125; Anderson v. Burchett, 48 Kan. 781 (30 Pac. 174). (e) Filing a motion to elect, without special appearance, is a general appearance. Whiting v. Budd, 5 Mo. 443. (4) The court did not err in overruling defendant's demurrer to the evidence. That point was decided in the opinion on the first appeal, which is the law of the case. May v. Crawford, 150 Mo. 504; Butler Co. v. Company, 165 Mo. 456; Newcomb v. Railroad, 169 Mo. 409. (5) (a) Where questions are ruled out, it is requisite, in order to have the ruling reviewed, to make an offer of proof, showing what was the evidence sought to be elicited. Jackson v. Hardin, 83 Mo. 175; Berthold v. O'Hara, 121 Mo. 88. (b) The inquiry into questions

collateral to the suit by cross-examination in order to discredit a witness, rests in the sound discretion of the court. The application for change of venue is no part of this record. 94 Mo. 317; Mueller v. Hospital, 5 Mo. App. 401 (73 Mo. 244); Goins v. Moberly, 127 Mo. 116; Baker v. Schutte, 85 Mo. App. 57. (c) Where one makes the adversary party his witness, or takes his deposition, he may not afterwards impeach the credibility of said witness, although he may show a different state of facts from that to which the witness testifies. Ellicott v. Pearl, 10 Pet. 412; Chandler v. Fleeman, 50 Mo. 239; State v. Burks, 32 Mo. 363; Jordon v. Jordon, 3 Thomp. & C. (N. Y.) 269; Warren v. Gabriel, 51 Ala. 236; Hubbard v. Barkus, 38 Md. 178. (6) (a) The use of leading questions is a matter within the discretion of the trial court. Coats v. Lynch, 152 Mo. 162; State v. Hughes, 24 Mo. 147. (b) It is not error to assume a fact in an instruction when the fact is shown by uncontradicted evidence. Walker v. City, 99 Mo. 647; Bank v. Hatch, 98 Mo. 376; Sweeney v. Railroad, 150 Mo. 38. (7) It is not error to call for a finding additional to those essential to plaintiff's recovery, where the extra finding is otherwise harmless. Wright v. McPike, 70 Mo. 175; Houx v. Batteen, 68 Mo. 84; State v. Ware, 69 Mo. 332. (8) Instructions concerning negligence need not all be contained in the same instruction. If the instructions, taken together, fairly declare the law, it is sufficient. Owens v. Railroad, 95 Mo. 169; Hughes v. Railroad, 127 Mo. 447; Gordon v. Burris, 153 Mo. 223; Perrette v. Kansas City, 162 Mo. 238. (9) A passenger carrier, in its own station, is required to use ordinary care to direct its passengers to the trains they are to take. Eichorn v. Railroad, 130 Mo. 575; State v. Blunt, 110 Mo. 342; Penniston v. Railroad, 34 La. Ann. 780; Hutchinson on Carriers (2 Ed.), sec. 611; Railroad v. Hinsdale, 38 Kan. 307; Van Ostran v. Railroad, 35 Hun 590; Mulhouse v. Railroad (Pa.), 50 Atl. 937. (10) The accident to plaintiff in this case might reasonably

be found by the jury to be due to the negligence charged as a proximate cause. Adams v. Railroad, 100 Mo. 555; Spohn v. Railroad, 122 Mo. 1; Griffith v. Railroad, 98 Mo. 168; Pitcher v. Railroad, 40 N. Y. 896; Hulbert v. Railroad, 40 N. Y. 145; Railroad v. Winter,*143 U. S. 60; Patton v. Railroad, 32 Wis. 524. (11) The damages in this case are not excessive, compared with other verdicts for personal injuries, of which we furnish a few samples. $80,000: Phillips v. Railroad, 5 C. P. Div. (L. R.) 280. $48,750: 113 Pa. St. 530. $35,000: Dike v. Railroad, 45 N. Y. 113; Gulf Co. v. Shelton, 69 S. W. 653; 70 Id. 359. $30,000: Smith v. Whittier, 95 Cal. 279; Harrold v. Railroad, 24 Hun 184. $25,000: Ehrgott v. Mayor, 96 N. Y. 264; Hall v. Railroad, 46 Minn. 439; Ehrman v. Railroad, 60 Hun 580 (14 N. Y. Supp. 336), affirmed 131 N .Y. 576; Railroad' v. Holland, 18 Ill. App. 418; Dieffenbach v. Railroad, 5 App. Div. 91 (38 N. Y. Supp. 788); Alberti v. Railroad, 43 Hun 421; Hickinbottom v. Railroad,15 N. Y. St.11 (aff'd 122 N. Y. 91). $23,000: Erickson v. Railroad, 32 N. Y. Supp. 915. $22,250: Shaw v. Railroad, 8 Gray 45. $21,000: McMahon v. Ferry Co., 10 App. Div. 376. $20,000: Walker v. Railroad, 63 Barb. 260; Orban v. Company, 17 Wash. L. Rep. 477, 7 C. C. (Pa.) 39; Railroad v. Banfill, 107 Ill. App. 254; Railroad v. Mohnyhan, 76 S. W. 803; Railroad v. Shannon, 4 Ohio Cir. Ct. Rep. 449; Voss v. Railroad, 49 Super. Ct. 535. $19,453.34: Railroad v. Brazzill, 78 Texas 314 (14 S. W. 609). $19,000: Groves v. Rochester, 39 Hun 5. $18,500: Heddles v. Railroad, 77 Wis. 228. $18,000: Murray v. Railroad, 7 N. Y. Supp. 900. $17,793.33: Mendizabal v. Railroad, 85 N. Y. Supp. 869. $16,000: Railroad v. Appel, 77 S. W. 635; Railroad v. Abbey, 68 S. W. 293. $15,000: Railroad v. Fortin, 107 Ill. App. 157; Reilly v. Railroad, 65 App. Div. 453; Barksdull v. Railroad, 23 La. Ann. 180; Railroad v. Dorsey, 66 Tex. 148; Railroad v. Dunn, 106 Ill. App. 194; Railroad v. Wilcox, 37 Ill. App. 450 (8 L. R. A. 494) ; Roth v. Union Depot Co., 13 Wash. 525 (43

Pac. 641); Woodbury v. Dist., 5 Mackey (D. C.) 127; Railroad v. Thompson, 64 Miss. 584; Engler v. Tel. Co., 69 Fed. 185 (foot crushed); Railroad v. Johnson, 76 Tex. 421 (13 S. W. 463); Railroad v. Crowder, 130 Ala. 256 (30 So. 592) (leg); Schneider v. Railroad, 15 N. Y. Supp. 556; Solen v. Railroad, 13 Nev. 106 (leg); Sears v. Railroad, 6 Wash. 227 (33 Pac. 1081); Union Gold Co. v. Crawford, 29 Colo. 511 (69 Pac. 600); Morgan v. South Pac. Co., 95 Cal. 501 (30 Pac. 601); Schultz v. Railroad, 46 N. Y. Super. Ct. (14 Jones & S.) 221; Mitchell v. Railroad, 70 Hun 387 (leg).; Pence v. Railroad, 79 Iowa 389 (44 N. W. 686); Tedford v. Elect. Co., 134 Cal. 76 (66 Pac. 76); Galveston, etc., Co. v. Newport, 65 S. W. 657; Railroad v. Spurney, 97 Ill. App. 570 (affirmed, 64 N. E. 302); Railroad v. Sheeks, 56 N. E. 434, 155 Ind. 100; West. Union Co. v. Engler, 75 Fed. 102; Railroad v. Wilcox, 33 Ill. App. 450 (leg). $15,500: Taylor v. Railroad (Nev.), 69 Pac. 858. $16,044: Railroad v. Dooley, 86 Ga. 294; Railroad v. Fisher, 38 Ill. App. 33 (leg). $18,000: Stewart v. Railroad, 66 N. Y. Supp. 436 (54 App. Div. 623), affirmed, 166 N. Y. 604. $18,500; Railroad v. Charless, 51 Fed. 562; Tuthill v. Railroad, 81 Hun 616 (30 N. Y. Supp. 959). $19,000: Railroad v. Topliff, 18 Ohio Cir. Ct. 709, affirmed, 53 Ohio St. 679. $20,000: Railroad v. Sonders, 79 Ill. App. 41; Lacs v. Breweries, 70 N. Y. Supp. 672; Sabine & C. Co. v. Ewing (Tex.), 26 S. W. 638 (7 Tex. Civ. App. 8); Fonda v. Railroad, 77 Minn. 336 (79 N. W. 1043).

VALLIANT, J.—Plaintiff in attempting to alight from a moving train within the precincts of the passenger station of defendant railroad company at Buffalo, New York, fell and received injuries to his person; he alleges that the negligence of the defendant caused his fall and he sues for damages.

This is the second appeal in this case, and we now

refer to our opinion on the former appeal to show the view we took of the case at that time and the extent to which the controversy was then adjudicated. [Newcomb v. Railroad, 169 Mo. 409.]

At the threshold is a question to be disposed of before the merits of the case are reached. Did the trial court have jurisdiction?

The petition alleges that the defendant is a New York corporation. The suit was begun in the circuit court of the city of St. Louis, and was carried by change of venue to the circuit court of Lincoln county, from whence comes this appeal. The point is made that the original summons was not served on the defendant in such manner as to bring the defendant into court and give the court jurisdiction over it.

The sheriff's return is as follows:

"Executed this writ in the city of St. Louis, Missouri, this twenty-first day of May, 1898, by delivering a copy of the writ and petition to the Wabash Railroad Company, a corporation, agent of the within named defendant, by delivering a copy of the said writ and petition to A. M. Harrison, assistant treasurer of said Wabash Railroad Company, in charge of the main office of said Wabash Railroad Company in said city of St. Louis, the president or other chief officer of said Wabash Railroad Company being at the time absent; and further executed this writ in the city of St. Louis, Missouri, this twenty-first day of May, 1898, by delivering a copy of the writ and petition to the Cleveland, Cincinnati, Chicago & St. Louis Railway Company, a corporation, agent of the within named defendant, by delivering a copy of said writ and petition to W. P. Deppe, assistant general passenger agent of said Cleveland, Cincinnati, Chicago & St. Louis Railway Company, in charge of the main office of said Cleveland, Cincinnati, Chicago & St. Louis Railway Company in said city of St. Louis, the president or other chief officer being at the time absent; and further executed this writ in the city of St. Louis,

Missouri, this twenty-eighth day of May, 1898, by delivering a copy of the writ and petition to C. Meade Saffarans, freight contracting agent of the within named defendant, in charge of the office of the White Line Central Transit Company.''

The record at the return term shows the following: ''Now at this day comes the defendant and enters its appearance for the purpose of this motion only and not upon the merits, and upon its motion is granted ten days' time to plead to the jurisdiction of the court.''

Within the prescribed time the defendant filed this plea: ''Now this day comes the New York Central and Hudson River Railroad Company, and appearing for said purpose only, files this its plea to the jurisdiction of the court over it, and says that, as appears from the return of the sheriff herein, and the affidavits filed herewith, there has been no service upon it which requires it to appear and answer the petition of George A. Newcomb filed in this cause, Wherefore,'' etc.

Along with the plea was filed an affidavit of the vice president of the Wabash Railroad Company, stating that the Wabash was not the agent of the defendant railroad company, and the affidavit of W. P. Deppe saying that the Cleveland, Cincinnati, Chicago & St. Louis Railroad Company was not the agent of the defendant, and the affidavit of C. M. Saffarans that he was not the agent of the defendant. The court on March 6, 1899, overruled the plea, and defendant excepted and preserved the exception in a bill of exceptions filed March 8, 1899. On March 10, defendant filed an answer which repeated the former plea to the jurisdiction, and then denied ''each and every allegation of the plaintiff's petition,'' and further alleged that the plaintiff's injuries were due to his own negligence without specifying in what the negligence consisted. The last paragraph of the answer was on motion of the plaintiff struck out. Defendant then filed an amended answer in which it reiterated its plea to the jurisdiction, denied the allegations of the

petition, and averred that the plaintiff's injuries, if he sustained any, were caused by his own negligence in that he failed to act "with the ordinary care and prudence of a reasonably and ordinarily careful man." Plaintiff moved to strike out the last clause of the answer. Pending that motion the court record shows that on application of defendant the cause was continued to the next term at defendant's cost.

At the next term defendant withdrew its amended answer and filed a second amended answer which differed from the one next preceding only in that it stated in what the plaintiff's negligence consisted. In the amended answer and the second amended answer the form of the plea to the jurisdiction varied from that of the first plea in this, that instead of saying as in the first plea, "that as appears from the sheriff's return and the affidavits filed herewith there has been no service," etc., it says the court has no jurisdiction for the reason that neither of the railroad companies nor of the individuals named in the return was then or at any time the agent of the defendant for the purpose of receiving service of process or for any purpose; "and for the further reason that it appears on the face of the return of the sheriff to the writ herein, that no legal or proper service has been had on said defendant whereby," etc.

Plaintiff moved to strike out that part of the second amended answer denying that either of the railroad companies or of the individuals named in the return was the agent of the defendant, which motion the court sustained, and defendant excepted and filed its second bill of exceptions.

Plaintiff's reply was a general denial.

The cause was tried on those pleadings at the February term, 1900; there was a verdict and judgment for the defendant, from which the plaintiff appealed. The appeal was heard in this court, the judgment of the circuit court was reversed and the cause remanded for a

new trial. A reading of the opinion of the court by Judge MARSHALL will show the views of the court on the points presented on that appeal.

When the cause was returned to the circuit court the plaintiff filed an amended petition, to which the defendant answered, reiterating its former plea to the jurisdiction, denying the allegations of the petition, and pleading that the plaintiff's injuries were caused by his own negligence in jumping from a train while it was in motion and in failing to make proper inquiry for the location of his sleeping car. Plaintiff replied by general denial. The plaintiff then applied for a change of venue and the venue was changed to Lincoln county. In March, 1903, the cause was tried in the Lincoln Circuit Court on its merits; the trial resulted in a verdict for plaintiff for $20,000 damages, and a judgment in accordance therewith from which the defendant prosecutes this appeal.

The foregoing is so much of the record as bears on the question of jurisdiction; that which bears on the merits of the controversy will be referred to hereinafter.

I.

The plea to the jurisdiction rests on two propositions, first, that the statements in the sheriff's return are not true, as the affidavits filed show; second, on the face of the return the defendant is not legally summoned.

The return of the sheriff, for the purposes of the suit, is conclusive on the parties to it. This rule of law is founded in the necessity of the case. This court in Hallowell v. Page, 24 Mo. l. c. 593, said: "To permit the parties to an action to controvert the truth of the return of the officer deputed by law to serve the process would produce great delay and embarrassment in the administration of justice."

This court has always adhered to that ruling. [Stewart v. Stringer, 41 Mo. 400; Jeffries v. Wright, 51 Mo.

215; Burgert v. Borchert, 59 Mo. 80; Phillips v. Evans, 64 Mo. 17; Heath v. Railroad, 83 Mo. 617; Decker v. Armstrong, 87 Mo. 316.]

If the statements in the return are not true and the defendant suffers by reason thereof the officer will answer in a suit against him for a false return.

The court in this case, therefore, properly ignored the affidavits filed denying the facts stated in the return.

As to the return itself there are several points urged against its sufficiency, viz: that a corporation is not an agent for another corporation within the meaning of section 570, Revised Statutes 1899, relating to the service of process on a foreign corporation, therefore, the alleged service on the two railroad companies, named as agents in the return, is illegal. That the return does not show that defendant is a foreign corporation, or that it has no office or place of business in this State, or that Saffarans is the kind of agent contemplated by the statute.

The statute in question is part of section 570, Revised Statutes 1899; "fourth, where defendant is a corporation or joint stock company organized under the laws of any other State or country, having an office or doing business in this State" the summons may be executed "by delivering a copy of the writ and petition to any officer or agent of such corporation or company in in charge of any office or place of business, or if it have no office or place of business, then to any officer, agent or employee in any county where such service may be obtained," etc.

The object of this statute is to bring foreign corporations who do business in this State within the reach of process here, so that a citizen dealing with it or brought into contact with it and having any affair to settle with it in court need not be sent out of the State to prosecute his suit. It is a statute that, in a certain sense, is rather repugnant to what might be presumed to be the foreign corporation's preference in the matter. No one

desires to be sued, and corporations are not different from individuals in that respect. Therefore, if we should depend on the voluntary action of a corporation to appoint an agent here to receive service of process it is probable there would be no one appointed. For that reason the law makes the appointment, and designates as the agent for that purpose the agent through whom the corporation transacts its business here.

If the statute is construed to mean that only an individual can act as the agent to receive service of process for the foreign corporation, then the foreign corporation by selecting another corporation through whom to transact its business here may escape service of process altogether.

The statute is comprehensive enough to include a corporation in the term agent, and if the writ is to be served on a corporation as agent it must be served in the manner of serving corporations in their own behalf, for there is no other way in which to serve them.

We hold that if a foreign corporation transacts business here through the agency of another corporation it may under section 570, Revised Statutes 1899, be served with process through that agency.

The petition describes the defendant as a New York corporation; the sheriff assumed that was a correct description, and undertook to serve the writ in the manner prescribed by the statute for serving a foreign corporation; he does not say in his return that the defendant is a foreign corporation, and it was not necessary that he should do so. Any judgment the plaintiff may recover in this case is founded on his petition; if there is a Missouri corporation of the name New York Central & Hudson River Railroad Company a judgment founded on this petition will not affect it.

But the statute does not authorize the service of the writ on "any officer, agent or employee in any county," unless the fact is that the defendant has no office or place of business here, and the return is not

sufficient which shows a service on an agent not in the defendant's place of business unless it states that the defendant had no office or place of business at which the writ could be served. For this reason this return was not sufficient to bring the defendant into court, and if a motion to quash it had been made the court should have sustained it.

But what could be said in defense of a code of procedure that would require or permit a court in the face of this record and after all these years of litigation to quash the whole proceeding on the ground that the return of the sheriff on the original writ was not sufficient to bring the defendant into court if it had willed not to come?

The defendant could have made a special appearance for the purpose, and moved to quash the return for the insufficiency appearing on its face, and if the court had overruled the motion the defendant could have preserved its exception and have withdrawn, and if the court had then proceeded to render judgment for the plaintiff the judgment would have been reversed on appeal. But a plea to the merits is a general appearance and after that the character of the return is immaterial. There is no injustice in requiring a party, in a matter of procedure, to make his election and abide by his choice.

Appellant says that under our system of pleading it was bound to include in one answer every matter of defense it had; therefore, it did not waive the plea to the jurisdiction by its plea to the merits. It is true that under our system a plea in abatement is not waived by a plea in bar in the same answer and the defendant must include all his defenses in one answer. But the insufficiency of this return was not a point to be presented by the plea at all; it was out of place in the answer.

A question of jurisdiction may arise on the face of the return on the summons, or on the face of the pe-

tition, or by reason of some fact not appearing either in the return or in the petition. If it arises on the face of the return it is only a question of whether the defendant has been properly served, that is met by a motion to quash the return; if it arises on the face of the petition, it is a question of law and is met by a demurrer; if it arises from some fact that appears neither in the return nor in the petition, it is presented by a plea.

If the defendant had filed a motion to quash the return and it had been overruled and had then answered to the merits, could there be any doubt that the point was waived? Is there any difference in effect because it attempted to reach the defect in the return by plea? True, the plea attempted to put in issue the facts stated in the return, but that could not be done, as we have above seen, and all that was left of the plea was that the return was not sufficient.

If the defendant was of the opinion that the return was not sufficient to bring it into court and had confidence in its own opinion, it could have remained away and let the plaintiff take his own course. That was a station in the progress of the case where the law requires a party to rely on his own judgment and take the risk of being sustained in the end; he may keep out if he chooses, but if he elects to come in and plead to the merits, he submits his person to the jurisdiction of the court, and will not be heard afterwards to say that he was not properly called into court. This ruling is in conformity to the previous decisions of this court, as will be seen by reference to the cases cited in the brief for respondent on this subject.

After the cause was returned from this court to the circuit court of the city of St. Louis to be retried, an amended petition was filed by the plaintiff, and defendant filed its answer containing its so-called plea to the jurisdiction, and its two pleas to the merits. When the cause came on for trial, the parties entered immediately into the merits of the case. Defendant

made no effort to have a trial or ruling on his plea to the jurisdiction, did not call the attention of the court to it and offered no evidence in support of it, not even its affidavits, until after it had called and examined a number of witnesses on the merits, then it offered as evidence its former answers only. The court whose judgment we are now reviewing made no ruling on the subject and was not requested to do so.

We are referred to some decisions of the Federal courts holding that a question of jurisdiction properly raised and decided adversely to the defendant is not waived by his subsequent plea to the merits. But those decisions are founded on the law peculiar to Federal courts. Those are courts of limited jurisdiction, and the particular jurisdictional fact that brings the case into a Federal court must be shown and can not be waived. Those decisions have no application to a court of general common law jurisdiction.

The able and interesting arguments of the learned counsel have enticed us into a very much longer discussion of this subject than we intended.

## II.

The plaintiff's evidence at the trial tended to prove as follows:

The plaintiff was a passenger from St. Louis, destined to New York, over a route of connecting railroads, of which the defendant's road was one; the defendant's part of the route was from Buffalo to New York. Plaintiff arrived in the train at the defendant's passenger station in Buffalo at 6:30 p. m., August 8, 1897. Having twenty minutes to wait there he went into a restaurant in the station and took supper, after which he started to return to the train. On coming out of the restaurant he met Mr. Knox, a friend who lived in St. Louis, and who had come from St. Louis on the same train that had brought the plaintiff, although the plaintiff came in one sleeper and Mr. Knox in another. The

two friends walked on together, plaintiff assuming that they were to pursue their journey together as both were aiming for New York. But it turned out that in this the plaintiff was mistaken; the sleeping car in which Mr. Knox was travelling was to go by what was called the West Shore line, and that of the plaintiff by the New York Central. The West Shore train was to leave at 6:45, and the New York Central at 6:50 p. m. They saw no usher or other person in the service of the railroad company to direct them to their trains or of whom they could inquire. But Mr. Knox had before leaving his car inquired and was informed on what track he would find his train; the plaintiff had made no such inquiry, but on coming out of the restaurant did notice that the train he came on had moved from the track on which he had left it. Mr. Knox met another acquaintance, with whom he stopped to speak, and thus he and the plaintiff became separated. The plaintiff came alongside a train that seemed about to move, and, looking for the sleeping car in which he had come but not seeing it, he inquired of a sleeping car porter who was on the platform of a car in the train about to move: "Is that the train to New York?" the porter answered, "Yes," and the plaintiff then got on it. It had just begun to move slowly. Looking into the car and noticing that it did not look like the one on which he had come, he again asked the porter if that was the train for New York, to which the porter responded, "How do you want to go, sir?" The plaintiff said, "I want to go by the New York Central." Then the porter said, "This is the West Shore; jump off." The train was then moving very slowly. Plaintiff went down on the steps of the car and jumped off to the platform. But the platform at that particular place had an incline in it; the incline was about fifteen feet long, descending about a half inch to the foot, and on that incline was oil or grease of some kind. The plaintiff lit on the incline, his foot slipped, and he fell and slid under the

cars in such a way that his leg was run over by the wheels and the bones were crushed. Some bystanders immediately pulled him up and laid him on the incline; he was soon removed to a hospital, and his leg was amputated that night.

There was a lateral open space of about seven inches between the edge of the platform and the step of the car, and expert witnesses testified that that was an unsafe arrangement and increased the danger to persons getting off the train.

The defendant's testimony tended to show that it was the custom of the defendant (who was the owner of this station) to have ushers in uniform about the platforms and tracks to show people to their trains, and also to have placards with large letters posted on the trains to indicate what trains they were, but the plaintiff's testimony tended to show that on this occasion there were no ushers and no placards. The station itself was a very important terminal point; the average number of cars in and out daily at that time was 900 to 1,000. It was admitted at the trial that the West Shore line was held by the defendant under a lease and was then being operated by defendant.

The above are substantially the facts in the case; the only points disputed are those relating to oil or grease on the incline, the absence of ushers and placards, and the dangerous construction of the platform, on which points the testimony of defendant contradicted that of plaintiff.

At the close of the plaintiff's case defendant asked the court to instruct the jury that plaintiff was not entitled to recover, but the court refused the instruction and that is assigned for error.

That point was practically decided against the defendant in the former appeal. It was said by the court: "It is conceded that there was a conflict in the evidence as to whether there was or was not grease upon the platform, and, therefore, the plaintiff was entitled to go

to the jury.'' The evidence for the plaintiff was at least as strong for the plaintiff on that point at the last trial as it was at the former, and besides, now there is evidence tending to show negligence of defendant in other points where there was none before. The act of the plaintiff in attempting to alight from a moving train under the circumstances was not so palpably negligent as to justify the court in so pronouncing it as a matter of law, but was properly left to the jury.

Appellant thinks that the evidence does not connect the plaintiff's fall with the grease on the incline. The evidence was that as he lit on the greasy incline his foot slipped and he fell. And the evidence goes much farther than to show that it was a mere insignificant spot where grease had been. One witness said that the incline was "very greasy and terribly slippery.'' Another said that he frequented the station and the platforms were usually greasy—he had frequently seen men oiling the journals and carelessly setting the oil can dripping with oil on the platform—he had seen men scraping the grease off the platforms with a spade—had himself stepped in grease and soiled his shoes. Another said that on this incline he noticed a "blotch of grease.'' It was also shown that the plaintiff's clothes, which before were clean and new, were much soiled with grease—there was grease on his coat, waistcoat and trousers. True, he might have come in contact with grease when he fell to the ground, but there was grease on the incline and it was for the triers of the fact to decide where he probably came in contact with it.

Besides, the evidence of Mr. Link, an architect, and of Mr. Moore, a civil engineer, was that the lateral space between the platform and the step of the car was negligent construction and dangerous to a passenger alighting. That is not very hard to understand even without the aid of science. When a passenger attempts to alight from a moving train the farther he is required to aim his footing to reach the platform the more out

of perpendicular he throws his body and the greater the risk of his falling. There was no error in sending the case to the jury.

## III.

There had been a change of venue granted the plaintiff on his application based on his affidavit that the inhabitants of the city were so prejudiced against him and that defendant had such an influence over them that plaintiff could not have a fair trial in that city.

When the plaintiff was on the witness stand at the trial, in his own behalf, on cross-examination he was asked, ''State who you know in the city of St. Louis who has a prejudice against you?'' The plaintiff's counsel objected, and the court sustained the objection. In answer to further cross-questions he stated that when he made the affidavit he honestly believed that he could not get justice in a damage suit in the city, when he was again asked, ''Who did you know were prejudiced against you?'' His counsel objected, and the court sustained the objection. That ruling is assigned for error. An adverse party has a right, within the limits of the court's sound judicial discretion, to ask a witness questions to elicit answers calculated to discredit or degrade him as a witness. But the question should relate to matters that would rightly tend to lower the witness in the estimation of the jury. If the witness in this case had answered that he could name no person, or no considerable number of persons, whom he knew to be prejudiced against him, it would not fairly have impeached him as swearing falsely in the affidavit for a change of venue.

The affidavit referred not to individuals, but to the inhabitants of the city as a body, and the prejudice was not to the plaintiff as an individual but to him in the capacity of plaintiff in a damage suit. A community sometimes has a sentiment on a given subject as pronounced as that of an individual and a party feeling that

he will encounter that sentiment to his prejudice in the trial of his suit may with perfect honesty of intention say that the community is prejudiced against him, meaning against him not as an individual but as a party to that suit.

That court ruled correctly on that point.

## IV.

Flannigan, a policeman who came to the relief of the plaintiff, tied up the bleeding artery and assisted in sending him to the hospital, was asked where the plaintiff was when he first saw him. He said: "I can't exactly state that, I didn't pay much attention to where he was, I was so anxious to get him to the hospital." Asked if he noticed grease around and about where plaintiff was lying, he said, "Well right close to the track, you know, there is always more or less grease there you know." "Did you take any notice of the·condition of the incline?" "No, I didn't." Cross-examined by defendant's attorney, he said: "You spoke of observing oil, do you mean that you observed oil on the track, planking or platform or on the stones that lie there next to the platform?" "It was right alongside the tracks." "On the boards?" "Yes." . . . "Did you personally and closely examine to see whether this that you saw there was water or oil?" "Well, no, I didn't, but I would naturally think that it was oil." "Did you put your finger in it at all?" "No, sir." "You didn't use either the sense of touch or smell?" "You could smell it easily enough. I did not put my hand on it to see what it was."

On redirect examination the plaintiff's attorney asked this question: "This substance, which you refer to on the incline near which Mr. Newcomb was lying, and which you have called oil, do you have any doubt, from its appearance, that it was oil or some other kind of grease?" This question was objected to and the objection was overruled, the witness answered: "I

haven't the least doubt at all but what it was grease or oil of some kind.''

That ruling is assigned as error.   The objection to the question was that it assumed that the witness had previously said that the oil was on the incline.

Whilst the witness had not in so many words said that the oil or grease that he saw was on the incline, yet that was the effect of what he had said.   He was asked about the place where Mr. Newcomb was lying when he came to him, which was the incline, there was no other place in question.   In answer to plaintiff's attorney he said that he paid little attention to the place, as his anxiety was to relieve the suffering man, but he said that right close to the track there was grease; then in answer to defendant's question, he said he meant that the grease was on the boards, by which we understand that the grease was on that part of the boards next to the track.   Then the cross-examination pressed him to say if it was water or oil, and he said that whilst he did not put his hand in it yet he judged it to be oil.   The question so seriously complained of was in effect only, ''Have you any doubt about its being oil?''   There was no error in that ruling.

## V.

The defendant offered to prove that shortly after this accident and while the platforms were in the same condition, the Grand Army of the Republic held a meeting at Buffalo, and that some years after that the Pan American Exposition was held there and on both occasions great crowds arrived and departed at and from this station and no accident occurred.   The court sustained plaintiff's objection to that testimony and that ruling is complained of.

The court ruled correctly in that particular.   To have admitted such evidence would only have confused the jury and led them away from the issues they were to try.

## VI.

The defendant complains of several of the instructions given at the request of the plaintiff. The first of which is as follows:

"The court instructs the jury that if you believe from the evidence that the plaintiff was a through passenger from St. Louis, Missouri, to New York City in the State of New York, by way of Buffalo, in said State of New York, and that on August 8, 1897, the through sleeping car from St. Louis to New York City on which plaintiff was being carried as such passenger, reached the Exchange Street station at Buffalo, New York, in the progress of said journey to the City of New York, and that said station was then managed and controlled by defendant, and if you further believe from the evidence that said car arrived at said Buffalo station at 6:30 p. m. of said day on track No. 6, and was to leave said station on the way to New York at 6:50 p. m. over defendants' main line, the New York Central and Hudson River Railroad, and that plaintiff during said interval of time between 6:30 and 6:50 p. m., visited the restaurant in said station to obtain refreshments, and upon his return to the train shed of said station, before 6:45 p. m., discovered that the said sleeping car on which he had been traveling as a passenger as aforesaid was no longer standing upon said track No. 6, on which plaintiff had left it, and that plaintiff did not know where said sleeping car was and thereupon endeavored to find the said car, and in so doing observed a train headed towards the east upon track No. 4 in said station, and that said train contained several sleeping cars and had the general appearance of a through train, and that on asking the porter on one of said sleeping cars of said train, plaintiff was told by him that said train was the train for New York, and that plaintiff thereupon and in consequence of said statement of the porter got on said train, believing it to be the train of which said sleeping car

on which he rode from St. Louis was a part, and that afterwards plaintiff was informed by said porter that said train was the West Shore train and that he then was directed by said porter to jump off and that plaintiff then stepped to the platform adjacent to track No. 4 of said station from the step of said sleeping car of said West Shore train while the latter was in motion, and in so doing plaintiff slipped upon said platform and fell underneath said train and was run over, whereby he received personal injury in the loss of part of his leg; and if you further find that said injury was so received by plaintiff as a direct consequence of negligence on the part of defendant as defined in other instructions, and that plaintiff was not guilty of any want of ordinary care on his part contributing to his said injury, in so stepping from said West Shore train, then your verdict should be for the plaintiff.''

On this instruction defendant makes the following criticisms:

(a) That it is not based on the pleadings; that whilst the petition alleges that the defendant was negligent in not using reasonable care for directing passengers in plaintiff's situation to the trains they were to take, it does not allege that any employee of defendant misdirected him; the distinction drawn is between nondirection and misdirection.

When the plaintiff arrived in the station at that hour, with twenty minutes to wait, the defendant's restaurant in the station was an invitation to him to go to it for refreshments. The business was such that at that point incoming trains were broken up and new trains made to go out. It was a place of great activity in that business. The train in which the plaintiff had come divided—some cars were to go thence over one route and some over other routes. Two trains were leaving for New York, within five minutes of each other, on tracks side by side, in the same station and both under defendant's control. Under those conditions the duty devolved

on the defendant to direct passengers to their proper trains. The defendant recognized that this duty devolved on it, and it introduced evidence to show that its custom was to have ushers there in uniform to so direct passengers, and also to have placards posted on the trains giving the necessary information, and its evidence tended to show that ushers and placards were there on this occasion but in that respect it conflicted with the plaintiff's evidence and raised a question of fact for the jury.

The plaintiff's petition charges negligence in that respect, but does not charge negligence in that he was misdirected. This instruction, however, conforms to the change in the petition; the failure to direct the plaintiff to his proper train left him to wander in search of it, and in his search he fell in with the porter who gave him misdirection; it was the absence of the non-direction that rendered him liable to the misdirection; if there had been no porter on the platform and plaintiff had boarded the car to inquire, the consequence in legal effect would not have been different; the proximate cause of his boarding the wrong train was the neglect of the defendant to point out the right train to him.

And the instruction does not place the negligence on the misdirection of the porter, but describes the situation and the catastrophe, and then says that if it was caused by the negligence of defendant as defined in other instructions the defendant was liable. The other instructions referred to limit the negligence to the allegations in the petition.

(b) It is said that the instruction declares the act of the porter to be negligence as a matter of law. That is a misconception of its meaning. The porter's part was only stated in the description of the catastrophe.

(c) The last objection made to the instruction is that it omits one of the acts charged in the answer as negligence on the part of the plaintiff, requiring the jury to find for the plaintiff on the finding of the facts named

and also finding "that the plaintiff was not guilty of any want of ordinary care, on his part, contributing to his injury in so stepping from the West Shore train;" it is contended that it should also have required the jury to find that the plaintiff was not guilty of negligence in the matter of making proper inquiry for his train.

The plaintiff couched that part of the instruction in language more favorable to defendant than he need have done. It would have been more accurate to have said that on the finding of the facts mentioned the verdict should be for the plaintiff unless the jury should find from the evidence that the plaintiff was also guilty of negligence in the particulars named which contributed to the injury. But the form used was to the defendant's advantage, inasmuch as it seems to place on the plaintiff the burden to prove that he was not guilty of negligence. The instruction, however, is not amenable to the objection made. It does not authorize a verdict for the plaintiff until he has proven to the satisfaction of the jury that his injuries were the result of defendant's negligence as defined in other instructions. The other instructions defined the acts that would constitute negligence on the part of the defendant. And in instruction 6 for plaintiff the two acts pleaded in the answer as constituting contributory negligence are distinctly defined, and in instruction 4 given for defendant the jury are told in effect, that whilst it was the duty of defendant to furnish such services as would afford the plaintiff convenient information to enable him to find his train, yet it was also the duty of the plaintiff to use ordinary diligence to obtain such information, and if the jury should find that the defendant furnished such service and the plaintiff failed to avail himself of it, the defendant was not responsible for his getting on the wrong train and that should not be taken into account against the defendant. And in instruction 8 for defendant the jury are told that if the plaintiff was negligent in either of the

particulars stated in the answer and such negligence contributed to his injury the verdict should be for the defendant.

The first instruction referred the question of negligence to all the other instructions and on the whole we find no fault with it.

## VII.

The second instruction for plaintiff is to the effect that if the jury should find that when the plaintiff returned to the train shed after leaving the restaurant he discovered that the car in which he had arrived was not on the track where he left it, and he did not know where it was, and defendant had failed to make reasonable arrangements for directing him to his car or use ordinary care to do so, and that as a direct result of that failure the plaintiff got on the wrong train, and on discovering that fact got off while the train was in motion, and while exercising ordinary care on his part slipped in doing so and was injured, "then such omission or failure of defendant to exercise ordinary care as aforesaid was negligence on the part of defendant."

Appellant contends that there was no evidence on which to base that instruction, and that the instruction asked by defendant declaring that there was no evidence to support the allegation in the petition that defendant had failed to exercise reasonable care to furnish means for directing a passenger to his train, should have been given.

The defendant's testimony was that uniformed ushers were there and that a placard was on the New York Central train, but both Mr. Newcomb and Mr. Knox testified that they saw neither usher nor placard.

Counsel for defendant draw the conclusion from the testimony of plaintiff and Mr. Knox that they did not see the ushers or the placard because they were interested in each other's conversation and did not look, but those witnesses do not say that and whether that was

so or not was a question for the jury. The plaintiff was pressed on this point in cross-examination and he said that the porter on the sleeping car "was the only man that I saw around there that was a railroad man that I might ask of if that train was for New York." When two intelligent men say that they were in the train shed looking for their train and saw no one to point them to it, it is evidence tending to show that there was no one there and it was for the jury to weigh the evidence.

Another objection made to this instruction is that the negligence referred to therein was not the proximate cause of the accident. It was the cause of the plaintiff's getting on the wrong train, it was the cause of the plaintiff's being in the position from which in trying to extricate himself the injury resulted. Unless, therefore, between the getting into that position and the accident, some other cause intervened, the act of the defendant which led the plaintiff into the position was the direct cause of the accident.

And if there was another cause intervening which combined with the former act to produce the injury and if the defendant was responsible for that cause also, it can not be held to be such an independent cause as to relieve the defendant from liability for its initial act of negligence. That is to say, if the defendant's negligence was the cause of the plaintiff's getting on the wrong train and he was injured in trying to get off without any negligence on his part, the fact that the danger attendant upon his alighting was increased by the further negligent act of the defendant in reference to the condition of the platform, would not relieve the defendant from liability for its first act of negligence on the ground that it was remote from the accident.

In 1 Thompson on Negligence, sec. 69, it is said: "The question of proximate cause does not arise in an action for personal injuries occasioned by an acci-

dent resulting from two or more causes, for all of which the defendant is responsible.''

There was no error in that instruction.

## VIII.

The third instruction told the jury that it was the duty of the defendant to exercise ordinary care to keep the platforms mentioned in the evidence "in a condition sufficiently free of grease or other slippery material, to be reasonably safe for use by a person in stepping thereon from a train in motion on track No. 4 in said station while exercising ordinary care in so doing,'' and if the defendant failed to do so and suffered grease or other slippery material to remain on the platform after lapse of a reasonable time to remove the same so as to render it dangerous to a person stepping from a moving train while exercising ordinary care, and that while using ordinary care in attempting to alight from the moving train plaintiff stepped and fell in consequence of the greasy condition of the platform, then the defendant was negligent, providing the train was ''not moving at such a rate of speed as would have deterred an ordinarily prudent and careful person from so attempting to alight from said train.''

The complaint of this instruction is that there was no evidence that the incline was greasy and that defendant was under no obligation to furnish a safe platform upon which to alight from a train in motion.

As to the evidence of grease on the incline we have nothing more to say.

Every one knows, and probably railroad men know it better than other people, that in this age of hurry men do jump on and off trains while they are in motion. Whilst a railroad company is not expected to provide appliances to be safe against the danger incurred by one acting in disregard of his own safety—for example jumping from a train moving so fast that common prudence would forbid the act—yet it is expected to know

that men of ordinary prudence do jump on and off trains moving slowly, and whilst it is not as safe as to get on or off a train that is not moving at all, yet it is a very common practice and the railroad company knowing that it is likely to occur should take reasonable care to render it not more dangerous than necessary. That is all the care that this instruction says the law requires and we find no fault with it.

## IX.

The fourth and fifth instructions for the plaintiff are discussed together. The fourth referring to the admitted fact that the West Shore train was being operated by the defendant told the jury that the porter of the sleeping car above referred to should be regarded by the jury as an employee of the defendant "so far as concerns the rights and duties of plaintiff and defendant toward each other on account of the facts and circumstances shown by the testimony in this action."

The fifth was to the effect that if after the plaintiff discovered that he was on the wrong train the porter told him to jump off, and if the train was going at such a rate of speed that it was dangerous to do so, that plaintiff was unaware of the fact and under the circumstances could not by the exercise of ordinary care have discovered it, but that the porter by the exercise of ordinary care would have known of the danger but nevertheless gave the plaintiff direction to get off and the porter's direction influenced the plaintiff's action in getting off "and that in the aforesaid conduct of the porter he omitted to exercise ordinary care for the plaintiff's safety in the circumstances, then defendant was guilty of negligence."

We see no objection to those instructions. The West Shore train under the admission was as much the defendant's train as was the New York Central train. True the plaintiff was not a passenger on the West Shore, but he was under the defendant's roof, looking

for his train, this porter was the only person according to plaintiff's evidence to whom he could apply for information, such information was in the line of such a servant's duty.    The porter knew, but the plaintiff did not know, that two trains were to leave that station about the same time for New York; the plaintiff's question indicated that he thought of only one train:  "Is that the New York train?"  "Yes."   The answer was true as far at it went, but was deceptive by not going as far as it should have gone.

Then when the plaintiff was on the train and it was moving and the mistake was discovered the porter told him to jump off, and acting on that advice or direction or suggestion, whichever it may be called, the injury was received.   Of course if the train was moving at such a speed that it was obviously dangerous to attempt to alight, what the porter said would not relieve the plaintiff from the imputation of negligence.   But the purport of the instruction is that if the plaintiff did not know the danger and by the exercise of ordinary care could not have discovered it, yet if the porter knew it or by the exercise of ordinary care he could have discovered it, then he was negligent in giving the direction and his negligence was the defendant's negligence.   The plaintiff was a man of intelligence and education and we may assume that the porter in that respect was inferior to him, but concerning the particular thing then to be discerned the porter may well be presumed to have had more knowledge or better judgment.   At least that was a question of fact and the jury was the judge.

## X.

The sixth instruction for the plaintiff mentions the two acts of the plaintiff alleged in the answer to have been negligence, and informs the jury that the burden is on the defendant to prove them, and unless they are proven by the preponderance of the evidence the jury should find against the defendant on that issue.   The

criticism is that the instruction means that defendant must prove both acts of negligence in order to entitle it to a verdict. The instruction is liable to that interpretation, but so also is instruction 8 given at defendant's request on the same point: ". . . if you believe from the evidence that the plaintiff's injury was caused in part by defendant's negligence and in part by the neglect or imprudence of plaintiff himself in the particular mentioned in the answer your verdict must be for the defendant.'' But whatever doubt there might have arisen on a very close adherence to the form of expression either in the plaintiff's or the defendant's instruction on this point is removed by instructions 4 and 7 for defendant. In those two instructions the two acts of alleged contributory negligence are treated separately; in 4 it is said that if the defendant had servants in charge to direct people to the trains and that plaintiff got on the wrong train because he neglected to ask the defendant's servants there for information then defendant was in no way responsible for his getting on the wrong train; and in 7 the jury are told that if under all the circumstances they believed the plaintiff in attempting to alight from the moving train did not exercise ordinary care the verdict must be for the defendant. The defendant was not prejudiced by the form of the sixth instruction.

## XI.

The court refused a number of instructions asked by the defendant which were to the effect (a) that there was no evidence that defendant failed to use ordinary care so to arrange, manage and construct its station as to avoid injury to the plaintiff; (c) no evidence to support the charge that the space between the platform and the car was negligent construction; (e) that though the porter was negligent in giving plaintiff information which led him to get on the wrong train, yet it should not be considered by the jury in determining upon their

verdict; that there was no evidence (d) that a servant of defendant directed the plaintiff to get off the moving train or (f) that the porter had authority to give such direction and therefore all evidence on that point should be disregarded.

These instructions were but repetitions of the same points occurring in other phases of the case already discussed and we have said all that we care to say about them.

In an elaborate instruction asked by defendant the issue as to grease or other slippery material being on the platform is presented and it contains this sentence: "If the jury find that there was no grease or slippery material at that point, or that plaintiff's falling was not caused by his slipping when he jumped from the car, but that his fall was due to some cause other than his slipping on grease or oil, then their verdict must be for the defendant." The court modified the instruction so as to make it read, "then their verdict as to this specification of negligence must be for the defendant," and gave it with that modification. There was no error in so modifying the instruction. If it had been given in the form as asked it would have limited the question of defendant's negligence to the subject of grease on the platform, which the court had no right to do under the evidence in the case.

## XII.

The last point presented by appellant is that the amount assessed as the plaintiff's damages is so excessive that it evinces passion or prejudice on the part of the jury.

The plaintiff's injuries are very severe and his suffering has been great. The bones of his left leg below the knee were crushed and the leg was amputated about five or six inches below the knee. He now uses an artificial leg, but because of the suffering he is compelled to take off the artificial limb frequently and use

crutches.  There is a chronic tendency to ulceration on the inside of the knee owing to some displacement or misplacement of nerves at the point of the amputation, and one of the surgeons was of the opinion that that condition might require another amputation.  At the date of the trial he was sixty-two years old.  Before the accident he was a man of bright spirit, buoyant and hopeful; now he is sad and dispirited, he avoids the companionship of his friends which he sought before; his life is blighted.

The jury assessed his damages at $20,000.

The assessment of damages in such a case is a very difficult matter.  There is no certain criterion by which they can be estimated.  The question is addressed to the conscience and judgment of the jury and the law can give the jury little assistance.  Compensation in money is what the law proposes to give, yet in many cases we well know that no amount of money will compensate. It will not do to say, "Put yourself in his place," because you can not put yourself in his place.

On the other hand it will not do to give way to fanciful ideas of compensation without regard to the rights of the defendant whose want of care has brought about the condition.  Though the defendant has been to blame yet reasonable compensation for the injury he has done is all that the law demands.

Going through the decisions of this court on this subject, lists of which the learned counsel on both sides have furnished us, we find that the juries and courts in this State have always been conservative and that is a gratifying history.

No verdict has been approved by this court in which the damages for an injury of the kind and degree now in question has been placed at so large an amount as was awarded by the jury in this case, and we are not willing now to depart from our hitherto conservative course and give this award our approval.  We do not attribute the award to passion or prejudice on the part

of the jury, but as a matter of judgment we think it is excessive. Guided by our precedents we think $10,000 would be a fair compensation (so far as money can compensate) for the plaintiff's suffering and loss of limb. In addition to that amount he should also be repaid the $762 which he has paid out for surgeon's bills, etc. If plaintiff sees fit to remit $9,238 of his judgment within ten days, as of the date of its rendition, we will affirm the judgment; otherwise, the judgment will be reversed and the cause remanded to be tried anew. *Brace, P. J.,* concurs; *Marshall, J.,* concurs in all except paragraph I as to which he holds that the sheriff's return was sufficient to bring the defendant into court; *Robinson, J.,* not sitting.